UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE CIT GROUP/BUSINESS CREDIT, INC.,      Case No. 09-cv-9861 (VM)

               Plaintiff,      ECF Case

     - against -

GRACO FISHING AND RENTAL
TOOLS, INC., DAN-RAD COMPANY, LLC and
DAN J. RAMBO,

            Defendants.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S COMBINED MOTIONS *IN LIMINE*

**HAHN & HESSEN LLP**
488 Madison Avenue
New York, New York 10022
(212) 478-4200
*Attorney for Plaintiff,*
*The CIT Group/Business Credit, Inc.*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 4

I.     KILBOURNE'S REPORT SHOULD BE EXCLUDED  UNDER FED. R.
CIV. P. 37(C) AND FED. R. EVID. 702 ............................................................ 4

     A.    Kilbourne's Report and the Undisclosed  Documents He Relied On
Should be Precluded ................................................................................. 4

     B.    Evidence Concerning Graco's Alleged Lost Profits is Inadmissible .......... 8

     C.    Kilbourne's Damage Computation Is Unreliable ..................................... 10

II.    THE PARKER REPORT SHOULD BE  EXCLUDED UNDER FED. R.
EVID. 702 ......................................................................................................... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

American Stock Exchange, LLC v. Mopex, Inc.,
    215 F.R.D. 87 (S.D.N.Y. 2002) ...................................................................................4, 5

Baker v. Urban Outfitters, Inc.,
    254 F. Supp. 2d 346 (S.D.N.Y. 2003) ........................................................................11

Boucher v. U.S. Suzuki Corp.,
    73 F.3d 18 (2d Cir. 1996) ...........................................................................................11

Chartwell Litig. Trust v. Addus Healthcare, Inc.,
    346 B.R. 621 (E.D.N.Y. 2006) ............................................................................10, 11

Compania Embotelladora del Pacifico, S.A. v. Pepsi Cola Co.,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009) ........................................................................12

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993).........................................................................................1, 14, 16

DynCorp. v. GTE Corp.,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..........................................................................8

Fisher v. Sellas (In re Lake States Commodities, Inc,),
    272 B.R. 233 (Bankr. N.D. Ill. 2002) ...........................................................................8

General Electric Co. v. Joiner,
    522 U.S. 136 (1997).....................................................................................................16

Global Crossing Telecommunications v. CCT Communications Inc.,
    No. 07-1942 (SMB), 2011 Bankr. LEXIS 2738 (S.D.N.Y. July 22, 2011).........................9, 10

Gotlin v. Lederman,
    No. 04 Civ. 3736 (ILG), 2009 U.S. Dist. LEXIS 78818 (E.D.N.Y. Sept. 1, 2009) .................7

Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus.,
    No. 95 Civ. 0673, 1996 U.S. Dist. LEXIS 17362 (N.D. Ill. Nov. 21, 1996)...........................5

In re Motel 6 Sec. Litig.,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) ..........................................................................4

Kalisch-Jercho, Inc. v. City of New York,
    58 N.Y. 2d 377, 461 N.Y.S. 2d 746 (1983)..........................................................................8

Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.,
      14 F. Supp. 2d 391 (S.D.N.Y. 1998) ............................................................15, 16

Lippe v. Bairnco Corp.,
      288 B.R. 678 (S.D.N.Y. 2003) ....................................................................14

Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.,
      84 N.Y. 2d 430, 618 N.Y.S. 2d 882 (1994)................................................9

Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.,
      273 F. Supp. 2d 436 (S.D.N.Y. 2003) ......................................................8, 9

Nosal v. Granite Park LLC,
      No. 07 Civ. 1977 (FM), 2010 U.S. Dist. LEXIS 92872 (S.D.N.Y. July 2, 2010)....................7

Pal v. New York Univ.,
      No. 06 Civ. 5892 (PAC), 2008 U.S. Dist. LEXIS 50902 (S.D.N.Y. July 10, 2008)................6

Point Prods. v. Sony Music Entm't,
      No. 93 Civ. 4001 (NRB), 2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. Feb. 23, 2004) .................6

Robinson v. Sanctuary Record Groups, Ltd.,
      542 F. Supp. 2d 284 (S.D.N.Y. 2008) ..............................................................13

Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.,
      No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. Dec. 14, 2001)..............12

Texas Instr. Inc. v. Powerchip Semiconductor Corp.,
      No. 06 Civ. 2305 (SHS), 2007 U.S. Dist. LEXIS 38312 (S.D.N.Y. May 24, 2007)................5

Tradex Eur. SPRL v. Conair Corp.,
      No. 06 Civ. 1760 (KMW), 2008 U.S. District. LEXIS 37185 (S.D.N.Y. May 6, 2009) ..........9

U.B. Vehicle Leasing Inc. v. Atlantic Mutual Ins. Co.,
      No. 00 Civ. 9266 (DC), 2004 U.S. Dist. LEXIS 3967 (S.D.N.Y. Mar. 10, 2004) .................15

U.S. Info. Sys., Inc. v. International Brotherhood of Elec. Workers Local Union,
      313 F. Supp. 2d 213 (S.D.N.Y. 2004) ..............................................................15

Youn v. Track, Inc.,
      324 F.3d 409 (6th Cir. 2003) ..........................................................................4

Zahler v. Twin City Fire Inc. Co.,
      No. 04 Civ. 10299, 2007 U.S. Dist. LEXIS 94966 (S.D.N.Y. Dec. 21, 2007).........................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11.......................................................................................6

Fed. R. Civ. P. 26(a) and (e) ................................................................................passim

Rule 37 .............................................................................................................4, 6

Rule 37(c)(1) .........................................................................................................4

Plaintiff, The CIT Group/Business Credit, Inc. ("CIT"), submits this memorandum in support of its combined motions pursuant to Fed. R. Evid. 702 and the standards for expert testimony expounded in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and its progeny, to exclude the separate expert reports and testimony of Patrick J. Kilbourne ("Kilbourne"), who has been proffered by defendant Graco Fishing and Rental Tools, Inc. ("Graco," together with the other named defendants, the "Defendants") to provide testimony in support of its $7.5 million counterclaim seeking lost profits, and Donald R. Parker ("Parker"), who has been proffered to provide testimony on the materiality of Graco's numerous admitted breaches under the parties' financing agreement.  In addition, CIT moves pursuant to Fed R. Civ. P. 37(c) to preclude Defendants from introducing into evidence certain documents withheld from production during fact discovery and the Kilbourne report which relies on those inadmissible documents.[1]  The expert reports of Kilbourne and Parker and CIT's rebuttal expert reports of James D. Decker and Matthew Berk are attached to the accompanying Declaration of John P. Amato in Support of Plaintiff's Motions *in Limine,* dated August 19, 2011 (the "Amato Decl.") as exhibits A through D, respectively.  The Amato Decl. provides a summary of the facts relevant to these motions.[2]

## INTRODUCTION

This action involves the breach of a financing agreement.  Graco is and has been in continuous default of its obligations to CIT under the financing agreement by reason of numerous material breaches. Defendants do not dispute their numerous defaults.  Rather, they

---

[1]  On February 11, 2011, with the permission of the Court, CIT submitted motions *in limine* to exclude Defendants' experts.  By order dated March 17, 2011, CIT's motions were denied without prejudice to refile. (Docket No. 65.)

[2]  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Amato Decl.

contend that such defaults were excused or waived by CIT and, in any event, they are not material.  In addition, in its amended counterclaim, Graco is seeking $5 million in lost profits damages, although the actual damages later claimed by Graco total $7.5 million as set forth in the Kilbourne report.

Despite an obligation to supplement their Initial Disclosures and Discovery Responses, which specifically requested any documents regarding Graco's counterclaim damages, Defendants chose not to provide any documents relevant to their alleged lost profit damages or to identify any individuals likely to have discoverable information concerning such damages.  Not until after the close of fact discovery did Defendants produce over 700 never-identified documents which were relied upon by Kilbourne in drafting his report. (Ex. G.)   These documents related to two lost business opportunities (F&F Tools, Inc. ("F&F") and Jim's Rental Services ("Jim's Rental")) and service/supply contracts with Occidental Permian, Ltd. ("Occidental") that Graco alleges it did not pursue and/or lost because CIT limited its access to capital.[3]   In addition, the Kilbourne report identifies previously unknown Graco employees (Steve Ferris and Bobby Gibson) as well as individuals at the third party target companies, all with knowledge of Graco's alleged lost profits counterclaim.  Since fact discovery had closed by the time the documents and individuals were identified, CIT had no opportunity to conduct depositions, serve follow-up document requests or take any other necessary discovery to address these new documents or depose additional individuals with relevant knowledge of the facts.  Such prejudice should not inure to CIT.

Defendants were well aware of the existence of these documents and individuals with knowledge of the facts since no later than March/April 2010 when they served their amended

---

[3]    The contracts with Occidental were for fishing and rental services and another contract to provide blowout preventors ("BOPs").

2

counterclaim and certainly before the close of fact discovery on July 30, 2010.  Documents produced by Kilbourne indicate that he began receiving relevant documents from Graco during the March/April timeframe and that by early June at the latest, he was in possession of the relevant information.  (Ex. I.)  Jon Rambo also admitted in his deposition testimony that he discussed the lost opportunities with Kilbourne and that Kilbourne had even spoken with at least one of the undisclosed witnesses (Steve Ferris) in the March/April timeframe. (Ex. H.)

Based on these facts, the Kilbourne report and the opinions expressed should be precluded for at least three reasons.  First, Graco failed to timely disclose documents and identify individuals with information relevant to its counterclaim.  As a result, at trial, Defendants cannot put the undisclosed witnesses on the stand to testify, without which the undisclosed documents cannot be authenticated.  For this reason, Defendants' counterclaim for lost profits suffers from a complete lack of proof rendering Kilbourne's report inadmissible.  Second, Kilbourne's opinion contravenes the plain language of the Credit Agreement which expressly bars Graco's recovery of lost profits.  Third, in rendering his opinions, Kilbourne committed numerous, serious errors relating to his methodology and calculations.

Parker's report and his testimony should also be precluded from the trial since it amounts to nothing more than Defendants' counsel's statements without a shred of expert opinion based upon any scientific, technical or other specialized knowledge that will assist the trier of fact to under the evidence or determine a fact in issue.

## ARGUMENT

### I.

### KILBOURNE'S REPORT SHOULD BE EXCLUDED
### UNDER FED. R. CIV. P. 37(C) AND FED. R. EVID. 702

**A.**     **Kilbourne's Report and the Undisclosed**
       **Documents He Relied On Should be Precluded**

Fed. R. Civ. P. 26(a) and (e) place an initial and ongoing burden on all parties to disclose the identities of individuals and copies or descriptions of documents and responses to discovery requests that they may use to support their claims or defenses. See Fed. R. Civ. P. 26(a) and (e). Rule 37(c) gives the initial disclosure requirement its bite, providing, "[i]f a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." The burden of proving substantial justification or showing an absence of harm rests with defendants, the dilatory party. See, e.g., American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

"Rule 37 has no bad faith requirement." Youn v. Track, Inc., 324 F.3d 409, 421 (6th Cir. 2003). Where a party fails to disclose information in violation of Rule 37(c)(1), preclusion of all evidence related to that violation is "automatic and mandatory" unless that party can demonstrate that their failure to disclose was harmless or substantially justified. Zahler v. Twin City Fire Inc. Co., No. 04 Civ. 10299, 2007 U.S. Dist. LEXIS 94966, at *4-5 (S.D.N.Y. Dec. 21, 2007); In re Motel 6 Sec. Litig., 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001). Accordingly, unless Defendants can demonstrate that their failure to disclose witnesses and produce documents prior to the close of fact discovery was harmless or substantially justified - which they can not - the Court should preclude Defendants' use of the undisclosed information.

There is no dispute that Defendants were obligated under Rule 26(a) and (e) to supplement their discovery responses.  Nor can Defendants dispute that they were aware of the existence of the undisclosed documents and identity of the unnamed individuals since at least March/April 2010 -- four months before the close of fact discovery.  Instead, Defendants have argued that the production of documents and identification of witnesses was not necessary until service of the Kilbourne report because Defendants did not know what documents or witness information Kilbourne would rely on until that time.  Thus, Defendants claim that they satisfied their supplementation obligation under Rule 26(e) when they served the undisclosed documents at or shortly after they served the Kilbourne report.  But this contention is erroneous.  Disclosing contentions and evidence in an expert report after the close of fact discovery is not the same as the seasonable supplementation required by Rule 26(e).  See e.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., No. 95 Civ. 0673, 1996 U.S. Dist. LEXIS 17362, at * 23 (N.D. Ill. Nov. 21, 1996); see Texas Instr. Inc. v. Powerchip Semiconductor Corp., No. 06 Civ. 2305 (SHS), 2007 U.S. Dist. LEXIS 38312, at *42-44 (S.D.N.Y. May 24, 2007) (holding that defendant was required to produce documents that its expert relied on before time for service of documents the expert relied on because the documents were responsive to plaintiff's document requests).

Likewise, Defendants' failure to disclose was neither harmless nor substantially justified.[4]  Because Defendants waited until after the close of fact discovery to produce the lost profit documents, CIT was deprived of an opportunity to obtain the discovery necessary to test the merits of and defend against Defendants' new damages theories.  As a result, CIT

---

[4]   "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002). "[F]ailure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." Id. at 93.

unquestionably was prejudiced, thus negating the possibility that Defendants' discovery violations were harmless. See Pal v. New York Univ., No. 06 Civ. 5892 (PAC), 2008 U.S. Dist. LEXIS 50902, at *14-15 (S.D.N.Y. July 10, 2008) (plaintiff suffered prejudice where discovery closed and if evidence was not precluded discovery would have to be reopened so that plaintiff can obtain discovery and would further delay case and impose further litigation costs on plaintiff).

Defendants' violation was also not justified. Defendants were aware of the existence of the undisclosed documents and witnesses since service of their Amended Counterclaim on April 9 (as would be required pursuant to Fed. R. Civ. P. 11). Yet, they chose to withhold this information from CIT until after the close of fact discovery. CIT had already requested all evidence to support Defendants' damages and none was provided. There was simply no way for CIT to know what Defendants' damages were about and who would be most knowledgeable about those unspecified damages without production of the relevant information. Under no set of facts could Defendants' decision to withhold production of the highly relevant information be considered justifiable. It was designed to (and did) impede CIT's defense of the Defendants' lost profit counterclaim.

Preclusion of the undisclosed documents and Kilbourne's report is an appropriate sanction for Defendants' discovery violations. In deciding whether to apply sanctions under Rule 37, courts are guided by the following factors: "(1) the party's explanation for the delay in advancing the new evidence; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." Point Prods. v. Sony Music Entm't, No. 93 Civ. 4001 (NRB), 2004 U.S. Dist. LEXIS 2676, at *31 (S.D.N.Y. Feb. 23, 2004). These factors weigh in favor of preclusion.

As demonstrated above, the first factor weighs heavily in favor of preclusion as Defendants' explanation for not producing the documents and never supplementing their mandatory disclosures is plainly unsatisfactory and was proffered in bad faith to conceal their strategic late disclosure.  See Gotlin v. Lederman, No. 04 Civ. 3736 (ILG), 2009 U.S. Dist. LEXIS 78818, at *15 (E.D.N.Y. Sept. 1, 2009) (unsatisfactory explanation for failure to produce documents requested and make required disclosures "weighs very heavily in favor of preclusion.").

The importance of the undisclosed documents/information also favors preclusion, as they squarely address Defendants' lost profit claims that seek over $7.5 million in damages.  The Kilbourne report identifies previously unknown individuals (past and present Graco employees and relevant third parties) with first-hand knowledge of Graco's damage claim.  Likewise, the undisclosed documents contain information concerning alleged lost acquisitions and contracts (which form the basis for Graco's damage claim) and are therefore highly relevant.  Defendants' misconduct in withholding these documents deprived CIT of the opportunity to test Defendants' damage theories and obtain possibly crucial evidence before fact discovery closed resulting in substantial prejudice to CIT.

The final factor, the possibility of a continuance, also favors preclusion.  It is undisputed that Graco has made no payments to CIT since October 2009 in reduction of its debt of over $24 million (other than the Court-ordered payment of $825,000 to adjourn to trial until September 26).  Any further delay will effectively reward Defendants and further punish CIT.  Therefore, while continuance is always a "theoretical possibility," it is not a "realistic solution" under these circumstances.  Nosal v. Granite Park LLC, No. 07 Civ. 1977 (FM), 2010 U.S. Dist. LEXIS 92872, at *18 (S.D.N.Y. July 2, 2010); Gotlin, 2009 U.S. Dist. LEXIS 78818, at *17-18 ("A

7

continuance is always theoretically possible … [but] in light of ample opportunity afforded [ ] to produce these documents, a continuance is neither deserved nor warranted.").

Defendants should not be permitted to use the Kilbourne report as a vehicle to circumvent the rules of evidence. Because Defendants did not comply with their discovery obligations, the evidence concerning their lost profits is inadmissible as a matter of law.  Since Defendants now have no way to place the untimely documents or hearsay testimony underlying the Kilbourne report before this Court at trial, the Kilbourne report lacks foundation and must be rejected.  See e.g., Fisher v. Sellas (In re Lake States Commodities, Inc,), 272 B.R. 233, 244 (Bankr. N.D. Ill. 2002) ("an expert's opinion carries no weight unless the facts he relies on to reach his conclusions are also proven.").   While Defendants may claim prejudice as a result of the exclusion of their undisclosed evidence, the prejudice is entirely of their own making.   The prejudice to CIT in admitting documentary and testimonial evidence which CIT cannot vet as well as the added delay (which Defendants have sought since the beginning of this case) and cost is enormous.

**B.**     **Evidence Concerning Graco's Alleged Lost Profits is Inadmissible**

Section 8.1 of the Credit Agreement expressly limits CIT's liability for damages providing, in pertinent part, that "IN NO EVENT WILL LENDER [CIT] BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES. (Ex. E, capitalization in original).  Such clauses are broadly enforced by New York courts.  See, e.g., Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 450 (S.D.N.Y. 2003); DynCorp. v. GTE Corp., 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002).

Only one narrow public policy exception exists to this general rule which prohibits from limiting their liability for gross negligence or willful misconduct.  See Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y. 2d 377, 416-17, 461 N.Y.S. 2d 746, 750 (1983).  Notably, however,

8

a party's economically motivated actions (as alleged by Defendants) "cannot, as a matter of law rise to the level of malice or intentional wrongdoing necessary to invalidate the contract's limitation on liability provision." Net2Globe Int'l v. Time Warner Telecom of New York, 273 F. Supp. 2d at 451; see also Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc., 84 N.Y. 2d 430, 618 N.Y.S. 2d 882, 887 (1994) ("whether the breaching party deliberately rather than inadvertently failed to perform contractual obligations should not affect the measure of damages;" conduct motivated exclusively by a party's own economic self-interest is insufficient to abrogate a limitation on liability provision); Tradex Eur. SPRL v. Conair Corp., No. 06 Civ. 1760 (KMW), 2008 U.S. District. LEXIS 37185, *12 (S.D.N.Y. May 6, 2009) (enforcing exculpatory clause to limit damages where breach was based on economic self-interest).

The recent case of Global Crossing Telecommunications v. CCT Communications Inc., No. 07-1942 (SMB), 2011 Bankr. LEXIS 2738, at *14-28 (S.D.N.Y. July 22, 2011) is instructive. Global Crossing involved a contractual clause in an agreement between two telecommunications companies to limit damages in a contract dispute.[5] During the contract term, Global Crossing became concerned about the value of internal communication CCT was handling, which forced Global Crossing to provide expensive services. Global Crossing proposed an amendment to the parties' contract increasing CCT's payments to Global Crossing. When CCT rejected the amendment, Global Crossing cut off CCT's international services and CCT sought damages. In ruling on a summary judgment motion, the court provided an excellent synopsis of New York and federal law on the subject of contractual provisions limiting damages and ruled that Global's decision to cut off international services to CCT was undertaken for economic reasons, and therefore was not willful conduct such as to fit within the public policy

---

[5]   The clause, much like the clause in the Credit Agreement, stated, "in no circumstances shall either we or you be liable for indirect, consequential, reliance or special loss or damages or for lost revenues, lost savings, lost business opportunity or lost profits of any kind." Id. at 3.

exception.  Id. at 17 ("Importantly, willful misconduct does not include the voluntary and intentional failure or refusal to perform a contract for economic reasons.")

Here, Defendants assert that all of CIT's "bad faith" actions were economically motivated (i.e., "to eliminate a loan deemed too favorable to the borrower," and "avoid the obligation and cost of funding a loan when CIT was in financial distress").  Accordingly, CIT's conduct does not fall within the public policy exception and Graco's recovery of lost profits is barred by the express terms of the Credit Agreement thereby rendering the Kilbourne report moot.

## C.  **Kilbourne's Damage Computation Is Unreliable**

Independent of the contractual bar to his testimony, Kilbourne's opinion should be excluded because it is unreliable and methodologically flawed.  The correct measure of damages resulting from an acquiring company's failure to acquire another company as a going concern is the loss of value that the acquirer suffered.   A well-accepted method for calculating such damages is the discounted cash flow ("DCF") method which measures "the present value of the anticipated future economic benefits of ownership of [a] company.  See, e.g, Chartwell Litig. Trust v. Addus Healthcare, Inc., 346 B.R. 621, 632 (E.D.N.Y. 2006).

Consistent with the DCF method, Graco's damages should have been computed by projecting the future pre-debt service "free cash flows" of F&F and Jim's Rental, discounting them using a weighted average cost of capital to reflect the debt and equity investors' required return, and comparing that figure representing their present discounted cash flows with their acquisition prices. (Decker Rpt. at 14.)  Instead, Kilbourne measured damages by predicting the targets future return on assets ("ROA") using past and future projections of Graco's ROA, applying Graco's projected ROA against the acquisition prices that Kilbourne assumed, and discounting the result by applying a weighted average cost of capital. (Kilbourne at 11-12.)

This methodology is faulty for a number of reasons.  In the past and his future projections of *Graco's* ROA to predict the ROA of the targets, Kilbourne made a key faulty assumption that the two companies to be acquired would perform the same as Graco.  (Id. at 12.)  Kilbourne did not consider projections of the financial performance of F&F or Jim's Rental or any other relevant reliable information.  Nor did he consider certain factors and variables, such as the market conditions that would affect their future financial performance and profitability.  These material flaws and assumptions in his analysis render his computation of damages speculative and unreliable.  See Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 355 (S.D.N.Y. 2003) (excluding expert's damages report because her calculation was speculative and lacked basis); Boucher v. U.S. Suzuki Corp., 73 F.3d 18, 22 (2d Cir. 1996) (finding that expert opinion on plaintiff's future earnings was unreliable because it was not supported by data and was based on assumptions).

Kilbourne committed other material errors.  His projections of Graco's future ROA was itself also flawed because the data he relied upon does not support those projections.  He projected that Graco's future ROA for the period from December 2009 to June 2011 would range from 0.72% to 2.31% with the ROA steadily increasing (and never decreasing).  (Kilbourne at 12; Attachment 5)  He based this range and trend on Graco's historical revenues (as opposed to Graco's ROA) for the period from April 2005 to November 2009.  (Id.)  Kilbourne therefore assumed that an increase in revenues necessarily translates to an increase in a company's ROA.  This is not true.  A company's revenues can increase while its ROA decreases if, for example, the company's costs have increased.  But even accepting his approach for argument's sake, Kilbourne's extrapolation of the future ROA trend from Graco's historical revenues is unsupportable.  The trend of Graco's historical revenues - which was rather erratic, at times

decreasing or increasing dramatically within a span of only a month or two (Kilbourne Rpt. at. 6) - is not consistent with the steadily increasing trend he projected for Graco's future ROA. <u>See Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.</u>, No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737, at *13 (S.D.N.Y. Dec. 14, 2001) ("Where … lost profits are at issue, 'an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding' a party's future prospects.").

The next step in Kilbourne's analysis was also flawed.  After he derived his projections of the future ROA of F&F and Jim's Rental using his inaccurate projections of Graco's ROA, he applied the ROA against purely speculative acquisition prices of $5 million for F&F and $4.5 million for Jim's Rentals.  (Parker at 12.)  The evidence from Kilbourne's own report, however, confirms that the F&F and Jim's Rentals acquisition opportunities were highly speculative and not at all developed to the point where anyone could reliably assign a purchase price. Discussions between F&F and Jim's Rentals were at a very preliminary stage.  There is no evidence that discussions went beyond very initial stages.  Likewise, Kilbourne did not conduct any independent investigation, nor did he consider certain facts that seriously undermined Defendants' speculations and his price assumptions, such as the substantial disparities in price expectations suggested during talks that were only preliminary in nature and the dismal market conditions that drove down business and asset values.  <u>See Compania Embotelladora del Pacifico, S.A. v. Pepsi Cola Co.</u>, 650 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (finding that expert's damages calculation that was based on inaccurate data and series of assumptions with no basis in fact or reality is inadmissible).

Kilbourne also failed to take into account the costs to Graco in servicing its debts to F&F and Jim's Rental on their seller notes, which should have reduced his computation of lost profits

damages.  See Robinson v. Sanctuary Record Groups, Ltd., 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008) (finding that expert improperly failed to consider defendant's certain expenses and costs in calculating total revenues that should have been deducted to determine damages).  As Decker points out in his rebuttal report, if one were to take into account the costs of servicing the debts to the sellers even using Kilbourne's figures, Graco suffered zero lost profit damages.[6]  (Decker at 16.)  In fact, Decker's analysis demonstrates that Graco would have lost money - $544,832 for F&F and - $599,147 for Jim's Rental, for a total loss of - $1,144,147.

Finally, Kilbourne's computation of damages associated with Occidental is unreliable. To predict future revenues lost, Kilbourne relied upon Graco's past average monthly revenue from Occidental under the fishing and rental services contract, which was a different contract providing for different services.   He relied upon that data even though Graco does not claim lost profits under the fishing and rental services contract, which was profitable for Graco, and the BOP contract that admittedly was not profitable for Graco.  (Kilbourne at 15; Ex. N at 480:4-6.) Given that the BOP contract was a losing proposition for Graco, it was unreasonable for Kilbourne to also have selected such a high profit margin of 42% to discount his projected revenues from the BOP contract.  (Kilbourne at 15.)  The unreliability of this assumption is corroborated by Graco's overall profit margin for January 2010 to May 2010, which was a negative 5.6%.  (Decker at 17.)  Kilbourne's computation of damages associated with Occidental is, therefore, unreliable and must be excluded.

---

[6]   Kilbourne's report does not state whether, and if so in what manner, these costs were taken into account in his analysis.  Nor does he explain how he derived at the weighted average cost of capital of 13.75% to discount the profits to reflect the rate of return an investor would have expected to receive after acquiring the businesses. (Parker, Attachment 5.)

## II.

### THE PARKER REPORT SHOULD BE
### EXCLUDED UNDER FED. R. EVID. 702

First and foremost, the Parker report should be precluded because it amounts to nothing more than an attorney-directed advocacy piece written for the sole purpose of advancing Defendants' claims and defenses without regard to the facts adduced during discovery. The role of an expert is to assist the trier of fact by providing information and explanations, not to advocate for his employer. Lippe v. Bairnco Corp., 288 B.R. 678, 687 (S.D.N.Y. 2003).

Parker, in simply parroting the opinions of defendants' counsel, is not utilizing any of his own special expertise to assist the trier of fact. He did nothing more in his expert report but to selectively choose certain facts that would fit neatly into theory of the case constructed by Defendants' counsel. In making a determination as to what evidence to select, he necessarily made witness and evidentiary credibility determinations, and offered opinions that fell in line with the theories espoused by Defendants' counsel. He did not offer any special expertise to explain why he chose one fact over another or why he chose to accept the testimony of one witness over another. What Parker did in his report is nothing more than any lawyer does in making persuasive arguments to the Court -- this, however, is not Parker's function. If Parker had not purported to conduct a "review" of the evidence and was merely told what to assume, CIT would not have an objection to his report. However, in undertaking a global review of the evidence and determining what witnesses and evidence to believe, Parker impermissibly invaded the provenance of the trier of fact. For this reason alone, his report fails the Daubert test and should be stricken.

In addition, the Parker report crosses the line into prohibited territory reserved for the trier of fact.  Under the guise of "expert" testimony, Parker offers bald conclusions on the ultimate legal issues that will be tried by this Court (*i.e.*, the materiality of Graco's breaches under New York law and whether CIT is liable to Graco on its counterclaim for breach of the duty of good faith and fair dealing).  These disputed issues must be resolved by consideration of facts that go to the parties' conduct and propriety and their state of mind, such as their intent and motivation, and any inferences to be drawn therefrom, none of which are outside the realm of common understanding and are for the trier of fact (and not an expert) to resolve.  See U.B. Vehicle Leasing Inc. v. Atlantic Mutual Ins. Co., No. 00 Civ. 9266 (DC), 2004 U.S. Dist. LEXIS 3967, at *23-24 (S.D.N.Y. Mar. 10, 2004) (finding that expert opinion on bad faith conduct of party was not "expert" evidence); U.S. Info. Sys., Inc. v. International Brotherhood of Elec. Workers Local Union, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004) (stating that expert cannot offer "personal evaluation of the testimony and credibility of others or of the motivations of the parties.").

The court in Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V., 14 F. Supp. 2d 391 (S.D.N.Y. 1998) excluded a similar type of expert opinion based on reasoning that applies with equal force here.  In that case, plaintiff sued defendant for breach of an alleged agreement wherein defendant retained plaintiff as its exclusive underwriter.  When plaintiff commenced the action, it obtained an *ex parte* order of attachment, which was later vacated.  Defendant asserted, among other things, counterclaims for abuse of process relating to the order of attachment and malicious prosecution.  To prove that it acted in good faith and without malice, plaintiff sought to call an expert witness to testify that plaintiff's conduct was proper.  The expert opined that plaintiff reasonably relied on its counsel's advice in suing defendant and obtaining an order of

attachment.  Defendant moved to exclude this expert testimony at trial.  In granting the motion, the court held that issues of whether plaintiff's conduct was reasonable and its state of mind were for the trier of fact to decide without help by an expert.  Id. at 404.

Finally, Defendants have failed to satisfy their burden of establishing that Parker's wholly subjective methodology is reliable.  Parker concludes in *ipsi dixit* fashion that CIT acted in "bad faith" and that Graco's breaches under the financing agreement were immaterial.  Parker's mere say-so, however, without something more is an insufficient basis for permitting him to testify.  General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")

## CONCLUSION

For the reasons set forth herein, CIT respectfully requests the Court to (a) preclude Defendants from introducing into evidence all documents not produced during fact discovery and (b) the expert reports and testimony of Patrick J. Kilbourne and Donald R. Parker.

Dated: New York, New York
       August 19, 2011

HAHN & HESSEN LLP

By: _John P. Amato_

    John P. Amato
    488 Madison Avenue
    New York, New York 10022
    (212) 478-7200

*Attorney for Plaintiff The CIT Group/Business Credit, Inc.*